**Margaret REED, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**COUNTY OF ORANGE, Defendants.**

**Case No. SACV 05–01103–CJC(ANx).**

United States District Court,
C.D. California,
Southern Division.

June 10, 2010.

M. Alim Malik, Roger M. Franks, Jackson DeMarco Tidus Petersen and Peckenpaugh, Irvine, CA, Miguel G. Caballero, Michael G. Dawson, Greg K. Hafif, Fenja Klaus, Herbert Hafif Law Offices, Claremont, CA, Gregory G. Peterson, The Peterson Law Firm, Newport Coast, CA, for Plaintiff.

Elizabeth Tom Arce, Melanie D. Long, Brian P. Walter, Liebert Cassidy Whitmore, Los Angeles, CA, Teri L. Maksoudian, Marianne Van Riper, Orange County Counsels Office, Santa Ana, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION AND SUMMARY JUDGMENT

CORMAC J. CARNEY, District Judge.

## INTRODUCTION

■ Plaintiff Margaret Reed and 682 opt-in Plaintiffs (collectively, "Plaintiffs") are Deputy Sheriffs for the Orange County Sheriff's Department ("the County") who seek to be paid for donning and doffing their uniforms. By order dated February 10, 2010, the Court denied the parties' cross motions for summary judgment as to their donning and doffing claims. Subsequently, the Ninth Circuit issued its opinion in *Bamonte v. City of Mesa,* 598 F.3d 1217 (9th Cir.2010), which addressed the compensability of donning and doffing police uniforms. The County now asks the Court to reconsider its order denying the motion for summary judgment. After reconsidering, the Court has determined that there is no genuine issue of material fact raised regarding whether donning and doffing of the uniforms worn by Plaintiffs are compensable work activities under the FLSA. To be compensable under the FLSA, the donning and doffing of a uniform must be so "integral and indispensable" to the employee's principal work activities that it has to be done at work. This is clearly not the case here. The vital law enforcement activities of deputies do not require the deputies to put on and take off their pants, shirts and boots at work. Indeed, numerous deputies don and doff their uniforms at home. Admittedly, the County's rule manual directs many of its deputies to change into and out of their uniforms at work, but that policy does not apply to all deputies, and even with respect to those deputies to whom the policy does apply, it is not followed by many of them. Regardless, the policy does not change the undisputed fact that deputies can don and doff their uniforms at home and still perform their vital law enforcement duties. Simply put, the donning and doffing of a uniform is not an integral and indispensable part of a deputy's job. Accordingly, the County's motion for reconsideration and summary judgment is GRANTED.

## BACKGROUND

Like most law enforcement departments across the country, the Orange County

Sheriff's Department requires its deputies to wear uniforms. A sheriff deputy's uniform may vary depending on the deputy's assignment, but the majority of deputies wear the basic Class "A" uniform, which consists of a shirt, trousers, shoes or boots, belt, socks, jacket, service cap and cap piece, badge, ID card, name tag, body armor and a Sam Browne utility belt. (Pl.'s Mot. Summ. J., Ex. 1 at 61.05.0.) Some deputies, for example, those assigned to corrections, may not wear the body armor and full Sam Browne belt. (Pl.'s Mot. Summ. J., Ex. 1 at 61.05.0.) In addition, some deputies occupy positions where they are not required to wear the Class A uniform. (*E.g.*, Def.'s Mot. Summ. J., Ex. 488, Vecchione Dep. at 19:22–20:24; Ex. 489, Viramontes Dep. at 35:15–36:8.) The County concedes that it does not pay deputies for the time it takes to don and doff their uniforms.

With respect to donning and doffing uniforms, the Sheriff–Coroner's Manual of Rules and Regulations states:

.1 Uniformed personnel assigned clothing lockers shall travel to and from work in civilian attire, with no distinguishable part of the uniform visible unless authorized by the Sheriff–Coroner or his designee.

.2 Uniforms shall be maintained in assigned lockers.

 a. Uniformed personnel not assigned clothing lockers who wear uniforms to and from work shall do so only with identifying insignia concealed from public view.

(Pl.'s Mot. Summ., J., Ex. 1.) Though many deputies do don and doff at work, the policy does not apply to all deputies. In fact, many deputies are authorized to don and doff off-premises, and even Plaintiffs admit that at least one-fifth of Sample Plaintiffs [1] have donned and doffed off premises. (Pl.s' Genuine Issue of Fact No. 48.)

Several of the Sample Plaintiffs testified that there have been periods where they were not assigned lockers. (*E.g.*, Meneses Decl., Exs. 475, 493, 462, 460.) For example, Deputy Pryzbyla does not have a locker and so changes in the parking lot. (Meneses Decl., Ex. 475, Pryzbyla Dep. at 17:1–9.) Similarly, Deputy Seamon did not have a locker and so changed in the restroom at the station. (Meneses Decl., Ex. 493, Seamon Dep. at 13:25–14:4.) Several motorcycle deputies also testified that they dress exclusively at home. (*E.g.*, Meneses Decl., Ex. 411, Barcelos Dep. at 33:3–9 ("Q: And when you start your workday [in motor] . . ., you put on your uniform at home? A: Correct."); Ex. 458, Lucas Dep. at 19:7–12 ("Q: So you wore a uniform as a motor deputy, correct? A: Yes. Q: And you generally put the uniform on at home? A: Yes."); Ex. 466, Muir Dep. at 14:4–24; 42:5–9 ("Q: [Y]ou put on the uniform and all your equipment, your vest, your gun, you do all that at home, correct? A. Yes."); Ex. 483, Spratt Dep. at 23:4–21; 36:17–23 ("Q: Since you've been assigned to Motors in January 2004 . . . do you typically put on your uniform at home in the mornings? A. Yes.").)

Other Sample Plaintiffs testified that they might partially dress at home and partially dress at work or will occasionally dress at home. For example, Deputy Thomas testified that he occasionally wears his uniform pants to work. (Meneses Decl., Ex. 486, Thomas Dep. at 20:4–20.) When Deputy Hylton goes to the Academy, he wears his uniform with a jacket over it. (Meneses Decl., Ex. 448, Hylton Dep. at 13:17–21.) Similarly, Deputy

---

**1.** After the Court conditionally granted class certification, the Court randomly selected 200 Sample Plaintiffs to be deposed, and the parties deposed 135 deputies.

Davis put on portions of his uniform in the parking lot during the Academy. (Meneses Decl., Ex. 430, Davis Dep. at 29:8–24.) Deputy Stepp testified that she donned her pants, boots and socks at home around fifty percent of the time when she was working in transportation. (Meneses Decl., Ex. 484, Stepp Dep. at 19:22–20:13.) Deputy Garduno will sometimes commute in uniform if she has worked the overtime shift. (Meneses Decl., Ex. 439, Garduno Dep. at 16:25–17:10.) Deputy Blaszak dressed at home when he had his patrol car with him. (Meneses Decl., Ex. 413, Blaszak Dep. at 57:21–58:3.) If Deputy Martinez is working in a division without lockers, he will wear a full uniform while driving to and from work. (Meneses Decl., Ex. 462, Martinez Dep. at 41:25–42:21.) When Deputy Macpherson was assigned to the court, she sometimes got dressed at home in order to save time. (Meneses Decl., Ex. 460, Macpherson Dep. at 29:7–9.)

Finally, some deputies testified that it is their regular practice to don and doff their uniforms at home, despite the fact that they have been assigned lockers. Deputies Conway and Smith, in addition to testifying that they dress at home, also submitted declarations in support of Plaintiffs' Motion for Summary Judgment in which they stated that they prefer to dress at home and that their supervisors are aware of this practice. Specifically, Deputy Conway declared:

> [w]hen I was assigned to Transportation at the Intake Release Center ("IRC") there were no lockers available for Transportation deputies. As there was no locker to maintain my uniform and safety equipment in, I was required to don and doff my full uniform and safety equipment at home and commute with a jacket over my uniform for safety ... Several months into my transportation assignment, lockers became available

... At this time I was assigned a locker. I continue to don and doff at home and commute with a jacket over my uniform. No supervisor has instructed me otherwise.

(Pl.'s Opp'n Mot. Summ. J., Ex. 37, Conway Decl. ¶¶ 4–5.) Similarly, Deputy Smith declared:

> When I began in Transportation there was no locker room or lockers for Transportation deputies. As there was no locker room or locker to maintain my uniform and safety equipment in, I was required to don and doff my full uniform and safety equipment at home and commute with a jacket over my uniform for my safety. My supervisors and command staff were aware of this practice. Approximately three months ago the [County] took an old storage room ... and converted it to lockers [sic] rooms for men and women deputies assigned to Transportation. At that time I was assigned a locker. I continue to don and doff at home. No supervisor has instructed me otherwise.

(Pl.'s Opp'n Mot. Summ. J., Ex. 46, Smith Decl. ¶¶ 3–4.) Deputy Murphey also testified that he has dressed at home for the past five years. (Meneses Decl., Ex. 467, Murphey Dep. at 12:1–4; 25:19–22.) There is no evidence in the record that any deputy has been disciplined for donning and doffing at home.

## LEGAL STANDARD

Summary judgment is proper if the evidence before the Court "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the

issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating either that there are no genuine material issues or that the opposing party lacks sufficient evidence to carry its burden of persuasion at trial. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). Once this burden has been met, the party resisting the motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

## ANALYSIS

 "It is axiomatic, under the FLSA, that employers must pay employees for all hours worked." *Alvarez v. IBP, Inc.,* 339 F.3d 894, 902 (9th Cir.2003), *aff'd on other grounds sub nom. IBP v. Alvarez,* 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005) (citations and internal quotation marks omitted). Despite this oft-repeated general principle, "[t]he Portal–to–Portal Act of 1947 relieves an employer of responsibility for compensating employees for activities which are preliminary or postliminary to the principal activity or activities of a given job." *Id.* The Ninth Circuit has enunciated a three-part inquiry for determining whether activities

like donning and doffing are compensable under the FLSA. *Bamonte v. City of Mesa,* 598 F.3d 1217 (9th Cir.2010). The first stage is whether the activity constitutes "work"; the second stage is whether the activity is an "integral and indispensable" duty; and the third stage is whether the activity is *de minimis.* *Bamonte,* 598 F.3d at 1224–25. "Work" is defined as an activity that is "physical or mental exertion ... controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *Id.* at 1224 (quotation and citation omitted). An activity is integral and indispensable if it is "necessary to the principal work performed and done for the benefit of the employer." *Id.* This case can be resolved on summary judgment at the second stage, so the Court need not determine whether donning and doffing constitutes "work" and if it is more than "de minimis." The Court begins its analysis with a discussion of the relevant case law.

The Supreme Court and the Ninth Circuit have, on several occasions, considered whether donning and doffing clothing and protective gear is integral and indispensable. *Steiner v. Mitchell,* 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956); *Bamonte v. City of Mesa,* 598 F.3d 1217 (9th Cir. 2010); *Ballaris v. Wacker Siltronic Corp.,* 370 F.3d 901, 903 (9th Cir.2004); *Alvarez,* 339 F.3d 894. In *Steiner,* the Supreme Court evaluated whether works in a battery plant had to be compensated for time spent changing clothes at the beginning of the shift and showering at the end. *Steiner,* 350 U.S. at 248, 76 S.Ct. 330. Employees were consistently exposed to toxic chemicals and fumes that posed serious hazards to the employees and, if carried home on their clothes or shoes, to their families. *Id.* at 249–50, 76 S.Ct. 330. Due to these conditions, "industrial and medical experts" agreed that "[s]afe operation ... require[d] the removal of clothing and

showering at the end of the work period." *Id.* Consequently, the showering had "become a recognized part of industrial hygiene programs in the industry, and the state law ... require[d] facilities for this purpose ..." *Id.* at 250, 76 S.Ct. 330 (citation omitted). In addition, the plant's insurer "would not accept the insurance risk if [the plant] refused to have showering and clothes-changing facilities for their employees." *Id.* at 251, 76 S.Ct. 330. The Supreme Court stated that "activities performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities ..." *Id.* at 256, 76 S.Ct. 330. Since changing clothes and showering "fulfilled mutual obligations" between the employer and employee, the Supreme Court determined that the activities were work under the FLSA. *Id.* at 253, 76 S.Ct. 330. To that effect, the Supreme Court concluded that "it would be difficult to conjure up an instance where changing clothes and showering are more clearly an integral and indispensable part of the principal activity of the employment than in the case of these employees." *Id.* at 256, 76 S.Ct. 330.

In *Alvarez*, the Ninth Circuit considered whether employees in a meat processing plant should be compensated for the time it took to don specialized clothing and safety gear. *Alvarez*, 339 F.3d at 897. The employer required the employees, pre-shift, to "gather their assigned equipment, don that equipment in one of the ... plant's four locker rooms, and prepare work-related tools before venturing to the slaughter or processing floors." *Id.* at 898. The Ninth Circuit observed that the employees' time was "strictly regulated and monitored," for instance, "[w]hen departing the processing and slaughter floors whether to go to the cafeteria or to the restroom-employees [were] permitted to leave only hats, hairnets, goggles, earplugs, and boots in place; outer garments, protective gear, gloves, scabbards, and chains [had to] be removed ..." *Id.* at 899. In addition, the plant required employees to don and doff certain clothes and gear "at various intervals throughout the workday, requiring employees to wait for and to retrieve that gear in particular areas at particular times on the [employer's] premises." *Id.* at 903. The Ninth Circuit also noted that governmental standards and regulations required sanitary conditions and the provision of protective equipment whenever necessary to ensure workplace safety. *Id.* at 903. Since employees were required by law, by the rules of the employer and by the nature of the work to don and doff on the plant's premises, the Ninth Circuit held that donning and doffing was "necessary" to the principal work performed. *Id.* at 903. Donning, doffing, washing and retrieving protective gear also benefited the employer because it helped satisfy the employer's legal obligations and prevented workplace injury and contamination. *Id.* at 903. Because of these factors, the Ninth Circuit determined that donning and doffing of the workers' clothing and protective gear was integral and indispensable and therefore compensable. *Id.* at 903.

The Ninth Circuit addressed this issue again in *Ballaris*, 370 F.3d 901. There, silicon wafer manufacturing plant workers sought compensation for donning and doffing "bunny suits," which were worn in cleanrooms that "ha[d] few of the air-borne impurities that exist in the ambient air." *Ballaris*, 370 F.3d at 903–04. The employer, through its policies and procedures, consistently reinforced its mandate that bunny suits could not be worn outside of the plant and were necessary to limit cleanroom contamination and to preserve

the integrity of the plant's silicon products. *Id.* at 904. The Ninth Circuit observed that the employer required employees to "change into and out of their uniforms at the plant, and only at the plant," the employer strictly enforced the requirement that employees wear uniforms, and employees "were prohibited from leaving the plant in their uniforms and were monitored by security cameras and guards to ensure compliance." *Id.* at 911. "As in *Alvarez*, because the plant uniforms were 'required by' the employer, and because the wearing of those uniforms was for the employer's benefit, the time spent putting them on and taking them off [was] included as compensable time." *Id.* at 911.

Most recently in *Bamonte*, the Ninth Circuit considered whether police officers should be compensated for donning and doffing their uniforms and safety gear. *Bamonte*, 598 F.3d 1217. The officers argued that their uniforms and gear contributed to their command presence and promoted officer and public safety. *Id.* at 1220. They also explained that for a variety of reasons, they preferred to don and doff their uniforms and gear at the police station.[2] *Id.* at 1220. The Ninth Circuit assumed without deciding that donning and doffing police uniforms constituted work and moved on to examine whether the activity was integral and indispensable. *Id.* at 1225–26. Distinguishing the officers' case from those of the employees in *Steiner, Alvarez* and *Ballaris*, the Ninth Circuit noted that dressing at the workplace was entirely optional. *Id.* at 1225. The Ninth Circuit also contrasted the officers' case with *Steiner* and *Alvarez*, noting that in those cases, on-premises donning

and doffing was imposed to ensure compliance with the law, but in *Bamonte*, the officers had cited no law, employer mandate, or regulation requiring on-premises donning and doffing. *Id.* at 1225. Donning and doffing on premises also did not fulfill any mutual obligation of the employer and the employee. *Id.* Finally, the reasons that the officers advanced for why they had to dress on-premises, for example, risk of loss or theft of uniforms and health and safety concerns, inured to their own benefit, not to the benefit of the police department. *Id.* at 1226. The Ninth Circuit concluded that the activity was not integral and indispensable because "[n]o requirement of law, rule, the employer, or the nature of the work mandate[d] donning and doffing at the employer's premises, and none of the other factors articulated in *Alvarez* weigh[ed] in favor of a conclusion of compensability." *Id.* at 1233.

In *Steiner, Alvarez* and *Ballaris*, employees were compensated for donning and doffing their uniforms and protective gear because the employers maintained strict controls concerning uniforms and gear, the employers required—without equivocation—that employees don and doff at work, the employers were required by law to employ safety measures, and serious health and safety concerns required employees to don and doff in special areas on premises. *Bamonte*, 598 F.3d at 1225. As in *Bamonte*, the factual circumstances of this case are markedly different from those of *Steiner, Alvarez* and *Ballaris*.

First, in *Steiner* and *Alvarez*, the employers were obligated, by law, to ensure that the conditions in the chemical plant

---

**2.** These reasons included: (1) the risk of loss or theft of uniforms and gear at home; (2) potential access to the gear by family members or guests; (3) distractions at home that might interfere with the donning process; (4) safety concerns with performing firearm checks at home; (5) discomfort associated with wearing the gear while commuting; (6) the increased risk of being identified as a police officer off-duty; and (7) potential exposure of family members to contaminants and bodily fluids. *Bamonte*, 598 F.3d at 1220.

and meat plant were sanitary. This was, in part, why the employees in both cases were, in essence, required to don and doff their uniforms at work and why the employees in *Steiner* were required to shower at work. In contrast, Plaintiffs cannot point to any regulation or law that requires them to don and doff at work. This is undoubtedly true because there is no health or safety consideration that would require deputies to don and doff their uniforms at work.

Second, Plaintiffs cannot cite to any uniformly-applied and followed policy that requires them to dress at work.[3] Motorcycle deputies don and doff at home exclusively. (*E.g.*, Meneses Decl., Exs. 411, 458, 466, 483.) Deputies without lockers are given little choice *but* to don and doff at home. (Pl.'s Opp'n Mot. Summary Judgment, Ex. 1.) Many deputies with lockers don and doff their uniforms at home. (Pl.'s Mot. Summ. J., Exs. 37, 46.) These deputies also concede that their supervisors are aware of this practice and have never instructed them to change it. (Pl.'s Mot. Summ. J., Exs. 37, 46.) In contrast to the employers in *Steiner, Alvarez* and *Ballaris* who heavily monitored when and where employees donned and doffed their uniforms, there is no negative consequence to the deputies for donning and doffing off premises. Simply put, there is no department-wide policy that requires all deputies to don and doff their uniforms at work.

Finally, Plaintiffs have failed to raise a genuine issue of material fact as to whether the nature of their work requires them to don and doff their uniforms at work. Though Plaintiffs claimed in their Motion for Summary Judgment and in their Opposition to the County's Motion for Summary Judgment that health and safety concerns require the deputies to dress at work, this claim is undermined by the fact that many deputies can and do dress at home or off-premises.[4] Moreover, there is no evidence in the record to suggest that either motorcycle deputies or the numerous other deputies who dress at home have endangered their families, been victimized, or have put their health and safety at risk. There is also no evidence to suggest that the uniform and gear are any less effective if they are donned at home versus at work. *Abbe v. City of San Diego*, Case No. 05–1629, 2007 WL 4146696, at *6 (S.D.Cal. Nov. 9, 2007) (holding that there was nothing about process of donning and donning uniform that must be done at work in order for the officer to safely and effectively carry out law enforcement duties). The deputies' reasons for donning and doffing their uniforms at work are quite different from those of the employees in *Steiner, Alvarez* and *Ballaris*. In *Steiner*, workers risked exposure to lead poisoning, in *Alvarez*, workers risked tainting the meat supply, and in *Ballaris*, the cleanrooms could have been contaminated if exposed to outside elements. These concerns required employees to dress at work. In this case, however, there is no demonstrable health or safety concern that requires deputies to

---

3. Even Plaintiffs themselves admit that approximately 23% of the Sample Plaintiffs testified that they either have or do dress at home. (Pl.'s Opp'n to Mot. Summary Judgment at 13.)

4. The Court in *Bamonte* also rejected the proposition that dressing at work benefited the employer because it alleviated concerns like risk of loss or theft of uniforms, access to gear by family members, risk of performing firearm checks at home, discomfort while commuting, risk of being identified as an officer off-duty, and risk of exposing family members to contaminants and bodily fluids from encounters in the line of duty. *Bamonte*, 598 F.3d at 1226. Plaintiffs have raised similar reasons with respect to why the nature of their work requires them to don and doff at work.

don and doff at work. If there were, every deputy would don and doff at work and the County would insist that they do so. Contrary to Plaintiffs' assertion, no deputy dons and doffs his or her uniform at work because the nature of the work demands it.

In sum, donning and doffing of uniforms is simply not integral and indispensable to Plaintiffs performing their law enforcement deputies. *Bamonte*, 598 F.3d at 1226. Consequently, the County does not have to pay Plaintiffs for putting on and taking off their pants, shirts and boots.

## CONCLUSION

For the foregoing reasons, the County's motion for reconsideration and summary judgment is GRANTED. The County is directed to file a proposed judgment within seven days of the date of this order.