**David DAGER, Greg Iiames Danny Boyd, and other similarly situated employees, Plaintiffs,**

v.

**CITY OF PHOENIX, a body politic, Defendant.**

No. 2:06–cv–01412 JWS.

United States District Court, D. Arizona.

Jan. 21, 2009.

Anthony Joseph Coury, Michael Napier, Michael Napier PC, Dale Forrest Norris, Arizona Police Association, Phoenix, AZ, Breanne M. Sheetz, Aitchison & Vick Inc., Seattle, WA, Will Aitchison, Aitchison & Vick, Portland, OR, for Plaintiffs.

John Mark Ogden, Laurent Richard George Badoux, Michael Joseph Lehet, Littler Mendelson PC, Phoenix, AZ, for Defendants.

## ORDER AND OPINION

### [Re: Motions at Docket 113 and 118]

JOHN W. SEDWICK, District Judge.

### I. MOTION PRESENTED

At docket 113, defendant City of Phoenix ("City" or "defendant") moves for an order granting summary judgment in its favor and holding that time spent donning and doffing by Phoenix patrol officers is not compensable under the Fair Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. § 201. At docket 118, plaintiffs David Dager, Greg Iiames, Danny Boyd, and others similarly situated ("plaintiffs") cross-move for an order granting partial summary judgment in their favor and holding that time spent donning and doffing is compensable under the FLSA. Plaintiffs respond to the City's motion at docket 129; defendant responds to plaintiffs' motion at docket 132. Plaintiffs reply in support of their motion at docket 135; defendant responds in support of its motion at docket 138. Oral argument was heard on January 13, 2009.

## II. BACKGROUND

At issue is whether time spent donning and doffing police uniforms and protective gear is compensable under the FLSA. The following material facts are not in dispute.[1] The Phoenix Police Department ("Department") is responsible for enforcing state laws and city ordinances, as well as investigating and suppressing crime throughout the City of Phoenix.[2] While on duty, sworn patrol officers must wear either a Class C or Class D uniform.[3] The Class C and Class D uniforms consist of mostly similar items and include a uniform or dress shirt, undershirt, turtleneck/dickey, trousers, trouser belt, nameplate, badge, socks, and boots or shoes.[4] The City also requires patrol officers to wear the following protective gear while they are on duty: a gun or utility belt, firearm, firearm holster, ammunition, ammunition carrier, handcuffs, handcuff case, handcuff keys, chemical spray, chemical spray case, Taser, Taser holster, portable radio, and a portable radio case.[5] The gun belt can hold the service weapon holster, ammunition, handcuff case, spray case, Taser case, and other items.[6]

In addition to the above items, patrol officers wearing a Class C uniform, who purchase a ballistic vest and receive reimbursement from the Department, must either wear the ballistic vest or have it immediately accessible while on duty.[7] Patrol officers who either elect to wear a Class D uniform, are involved in tactical situations (e.g., executing a search warrant) or are directed by their supervisor, must wear a ballistic vest while on duty.[8] Various officers of the Department have testified that the Department encourages, by means of safety briefings and bulletins, every patrol officer to wear a ballistic vest.[9] The ballistic vest is available for wear either under or over the uniform shirt.[10] Furthermore, patrol officers serving on special assignment or in special units must adhere to additional uniform and protective gear requirements. For example, sworn personnel on motorcycle assignment must wear the following items: an undershirt, turtleneck/dickey, dress shirt, breeches or trousers, trouser belt, socks, boots, motorcycle jacket, and helmet.[11] Other special assignments include bicycle assignment, canine handling, mounted patrol, tactical response, air support, drug enforcement, violent crimes, and homeland defense.[12] Each such assignment requires that officers wear duty-specific gear in various configurations. Together, the police uniform and protective gear are a package that patrol officers

1. The undisputed material facts are taken from the following documents:

 (1) Plaintiffs' Reply Statement of Undisputed Facts at docket 136 ("PF"); (2) Plaintiffs' Response to Defendant's Statement of Additional Facts at docket 137, which includes defendant's initial statement of undisputed facts and additional facts ("DF"); and (3) Plaintiff's Statement of Additional Facts in Support of Plaintiffs' Response to Defendant's Motion for Summary Judgment at docket 130 *together with* Defendant's Statement of Disputed and Undisputed Facts in Opposition to Plaintiffs' Response to Defendant's Motion for Summary Judgment at docket 139 ("PAF").

2. DF ¶ 1.

3. DF ¶ 5.

4. PF ¶ 1; DF ¶¶ 6–7. Plaintiff contends that a hat or raincoat may also form part of the Class D uniform. DF ¶ 7.

5. PF ¶ 2.

6. DF ¶¶ 9–10

7. PF ¶ 4; DF ¶ 11.

8. PF ¶¶ 3, 5–6; DF ¶¶ 12–13.

9. PF ¶¶ 8–12.

10. DF ¶ 14.

11. DF ¶¶ 16–17.

12. DF ¶¶ 18–41.

must be wearing to be duty-ready at the beginning of their shifts.[13]

The Department issues much of the basic gear to its sworn personnel, provides an annual uniform allowance to patrol officers for the purchase of additional uniform and protective gear items, and reimburses officers who choose to purchase a ballistic vest up to $500 once every five years.[14] The City requires patrol officers to report for duty wearing uniform and protective gear items required by Department policy.[15] Officers must wear these items for the duration of their shift and may not wear or carry unauthorized uniform or protective gear items.[16] The City prohibits patrol officers from wearing their uniforms off-duty, except for commuting and other uses that are authorized by the Department.[17] By Department policy, uniforms and protective gear are subject to evaluation and inspection by a supervisor at the start of each shift.[18] Officers who fail to meet the uniform and protective gear requirements are subject to discipline in certain circumstances, and the record is replete with testimony by various department officials pertaining to specific instances of disciplinary action taken against officers who have failed to comply with uniform and gear requirements.[19]

The general duties of patrol officers include protecting life and property, preserving the peace, preventing crime, detecting and arresting violators of the law, enforcing the law, and responding to emergencies.[20] The regular job duties of patrol officers include making arrests and issuing traffic citations; assisting with traffic accidents, disabled motorists, and traffic control; participating in community policing efforts; responding to calls for service; and patrolling proactively and becoming acquainted with persons and organizations assigned within the beat.[21] Officers may sometimes be required to exercise authority in certain situations in order to perform specific law enforcement functions.[22] For example, a patrol officer may be required to respond with authority to a life-threatening emergency or make criminal suspects and members of the public obey his or her lawful commands.[23]

The police uniform and gear aids an officer in carrying out these responsibilities, and identifies patrol officers to members of the public, criminal suspects, and other officers.[24] The uniform also conveys the patrol officers' position of authority to members of the public and criminal suspects.[25] The City encourages high visibility of its on-duty officers because "[a] high level of visibility produces feelings of safety and security"[26] Moreover, the City admits that the uniform may assist patrol officers in performing some of their regular patrol duties.[27] Certain protective gear also assists patrol officers in protecting the public and themselves from death or seri-

13. PF ¶¶ 157–58.

14. PF ¶¶ 18–22.

15. PF ¶ 23.

16. PF ¶¶ 24–25.

17. PF ¶¶ 47–48.

18. PF ¶¶ 26–27.

19. PF ¶¶ 35–40, 43, 44.

20. PF ¶ 50.

21. PF ¶ 51.

22. PF ¶ 58.

23. PF ¶¶ 52, 60.

24. PF ¶ 67.

25. PF ¶ 68.

26. PF ¶¶ 75, 78.

27. PF ¶ 83.

ous injury by criminal suspects.[28] The City admits that the Department would not send officers into the field without a firearm in a holster.[29] Ballistic vests, which many officers are required to wear, are designed to prevent injury from firearms, some edged-weapons, and traffic accidents.[30] Other protective devices affixed to an officer's gear belt, like handcuffs, chemical spray, batons, and Tasers, are used to obtain control of criminal suspects.[31] Patrol officers also use police radios to communicate with each other, coordinate activities, respond to emergencies, and obtain backup.[32] The City requires patrol officers to remain in radio contact while on duty.[33] One reason the Department requires its officers to wear uniforms and protective gear is to minimize its liability.[34] The City admits that patrol officers who carry functioning protective gear may sometimes use or rely upon those items to assist in and improve their level of performance, avoid injury, and make arrests.[35]

The "use of force" response options, formerly called the "continuum of force," are the options that patrol officers use to maintain control and order and to gain compliance from criminal suspects, detainees, and arrestees.[36] A patrol officer's "command presence"—which hinges on his or her uniform—is one "use of force" response option.[37] The City admits that in certain circumstances a patrol officer's command presence is part of what makes his or her response effective.[38] The benefits of such command presence include a psychological advantage, show of authority, diminishment of resistance, reduction in likelihood of conflict, and ability to take charge of situations.[39] In addition to the uniform, protective gear like firearms, chemical sprays, batons, Tasers, and handcuffs are considered use of force response options and assist officers in detaining criminal suspects without resorting to more lethal means.[40]

Some officers don and doff the uniform and protective gear as part of a single process, while other officers don and doff their uniform first and their protective gear later.[41] Many of the patrol officers estimated that it takes between 9 and 25 minutes to don their uniforms and protective gear before each work shift[42] and between 5 and 15 minutes to doff their uniforms and protective gear at the end of their shifts.[43] Of the officers who don and doff their protective gear after they don and doff their uniforms, many estimated that it takes between 5 and 10 minutes to

28. PF ¶ 91.

29. PF ¶¶ 92–93.

30. PF ¶ 102.

31. PF ¶ 95.

32. PF ¶ 97.

33. PF ¶ 100.

34. PF ¶¶ 169–70.

35. PF ¶¶ 171, 173, 176.

36. PF ¶¶ 120–21.

37. PF ¶¶ 131–34, 136–37.

38. PF ¶ 135.

39. PF ¶ 140.

40. PF ¶¶ 150, 152.

41. PF ¶ 179. The City disputes that both items are donned and doffed as part of a single process because "[s]everal deponents testified that they don and doff the uniform at home, but don and doff the protective gear at the station or reporting place, or have done so in the past." *Id.*

42. PF ¶ 191.

43. PF ¶ 193.

don [44] and between 3 and 8 minutes to doff just their protective gear.[45] The City contends that demonstrations by various deponents indicate that it takes as little as a matter of seconds for some officers to don and doff their gun belts and ballistic vests.[46] Whether donning or doffing at home, patrol officers must follow the same uniform and gear requirements.[47] The City does not have any written policy that addresses a preferred location for donning and doffing by patrol officers.[48] Of the 37 officers, sergeants, and lieutenants who provided deposition testimony on their donning and doffing practices, 12 testified that their primary practice in their current or most recent uniformed position is or was to fully change at home.[49] Of the remaining deponents, 17 testified that their primary practice is to change in part at home and in part at their reporting station,[50] and five testified that their primary practice is to change fully at their reporting location.[51] Finally, two of the deponents testified that they don and doff at various places and in varying degrees, sometimes changing fully at home, partially at home, fully at the reporting station, or partially at the reporting station.[52]

Plaintiffs point to various hazards that can arise from donning and doffing both uniforms and protective gear at home. For example, patrol officers can come into contact with hazardous materials while on duty, including blood and other bodily fluids, communicable diseases, and toxic products.[53] Moreover, weapons or tactical devices stored at home may be accessible to family members and others not trained in handling such items.[54] Additionally, plaintiffs allege that a patrol officer who commutes in uniform or partial uniform could be the subject of criminal attack or intimidation, or an act of revenge.[55] The City disputes this fact, but it is undisputed that officers who commute in partial uniform are at a disadvantage compared to fully uniformed officers because they do not have ready identification, and they may not have their radios or other protective gear.[56] Plaintiffs also point out that those wearing a utility belt or ballistic vest for an extended period of time have suffered back injuries.[57] Finally, plaintiffs have raised some concern with leaving gear at home and having gear stolen from personal and police vehicles.[58]

44. PF ¶ 192.

45. PF ¶ 194.

46. DF ¶¶ 225–300. Plaintiffs dispute these facts on the ground that the demonstrations did not include time spent retrieving and assembling the protective gear. *Id.*

47. PF ¶ 229.

48. PF ¶ 231; DF ¶¶ 42–45. Motorcycle officers, on the other hand, are required to wear their uniforms while riding Department motorcycles between work and home. PF ¶ 239; DF ¶¶ 46–48. Therefore, officers with take-home motorcycles are required to don and doff their uniforms and protective gear at home.

49. DF ¶¶ 123–24; *cf.* PAF ¶¶ 454–55.

50. DF ¶ 141. The City claims that 18 of the 37 deponents partially change at home, but plaintiffs dispute that Officer Lisa Gilligan ("Officer Gilligan") should be included in that category. *Id.*

51. DF ¶ 173.

52. DF ¶¶ 211, 216.

53. PF ¶ 254.

54. PF ¶¶ 287–88.

55. PF ¶ 259.

56. PF ¶¶ 276–77.

57. PF ¶¶ 283–84.

58. PF ¶¶ 297–299.

Department policy generally does not provide for compensation to sworn personnel for time spent donning and doffing their uniforms and gear outside the scheduled work shift.[59] The collective bargaining agreements between the City of Phoenix and the Phoenix Law Enforcement Association ("PLEA") in effect prior to and since May 31, 2003, do not expressly address the compensability of time spent donning and doffing uniforms or protective gear.[60] During negotiations for the 1977–2008 collective bargaining agreements, neither the City nor the PLEA raised the issue of whether police officers employed by the Department should receive compensation for time spent donning and doffing.[61] The City admits that at least since May 31, 2003, patrol officers expended uncompensated time before and after their shifts donning and doffing their uniforms and protective gear.[62] However, as plaintiffs point out, at least two officers on special assignment are in fact compensated for time spent donning and doffing. It is undisputed that Officer Estevan Armenta ("Officer Armenta"), while assigned to the Neighborhood Enforcement Team, was compensated for time spent in physical conditioning and changing into his uniform and gear.[63] In addition, the Department compensates Officer Chad Howard ("Officer Howard"), who is assigned to mounted patrol, for time spent caring for patrol horses and changing into his uniform and gear.[64]

## III. STANDARD OF REVIEW

█ Federal Rule of Civil Procedure 56 provides that summary judgment should be granted when there is no genuine dispute about material facts and when the moving party is entitled to judgment as a matter of law. The moving party has the burden to show that material facts are not genuinely disputed.[65] To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.[66] Once the moving party meets its burden, the nonmoving party must demonstrate that a genuine issue exists by presenting evidence indicating that certain facts are so disputed that a fact-finder must resolve the dispute at trial.[67] The court must view this evidence in the light most favorable to the nonmoving party, must not assess its credibility, and must draw all justifiable inferences from it in favor of the nonmoving party.[68] Whether an activity is excluded from hours worked under the FLSA is a mixed question of law and fact. "The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law." [69]

## IV. DISCUSSION

In its motion for summary judgment, the City argues that donning and doffing is not · a compensable activity under the

**59.** PF ¶¶ 221–22; DF ¶ 49.

**60.** PF ¶¶ 223–24; DF ¶¶ 86–87.

**61.** DF ¶¶ 88–89.

**62.** PF ¶¶ 225–26.

**63.** DF ¶¶ 176–77.

**64.** DF ¶¶ 195, 197.

**65.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**66.** *Id.* at 325, 106 S.Ct. 2548.

**67.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**68.** *Id.* at 255, 106 S.Ct. 2505; *Soldano v. United States*, 453 F.3d 1140, 1143 (9th Cir. 2006) (citation omitted).

**69.** *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir.2004).

FLSA because patrol officers have the "option and ability" to don and doff at home, rendering donning and doffing noncompensable preliminary and postliminary tasks, respectively. Further, the City claims that uniform change time is excluded from compensation by a "custom or practice" arising under a collective bargaining agreement. Finally, the City contends that time spent donning and doffing protective gear is *de minimis.*

In their motion for partial summary judgment, plaintiffs argue that donning and doffing of the police uniform and protective gear by Phoenix patrol officers is compensable under the FLSA because it is "integral and indispensable" to police work. Plaintiffs contend that this conclusion holds regardless of where donning and doffing is performed. Plaintiffs also argue that there are genuine issues of material fact regarding whether patrol officers have the "option and ability" to don and doff at home. Because the facts and governing law to be applied to the parties' motions are substantially the same, the court addresses the motions together.

### A. Statutory, Regulatory, and Jurisprudential Framework

█ Under the FLSA, it is axiomatic that employers pay persons in their employ for all hours worked.[70] "Work" is a "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer."[71] This definition has been expanded to include non-exertional acts.[72] Finding that the FLSA had been "interpreted judi-

cially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities," Congress enacted the Portal–to–Portal Act of 1947 ("Portal Act"), which amended and limited the scope of compensable work under the FLSA.[73] Section 4(a) of the Portal Act provides:

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act ... on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities ...
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.[74]

The Department of Labor ("DOL") has issued guidelines to employers interpreting the types of compensable activities under the FLSA and the Portal Act. To that end, the DOL issued an interpretive rule describing "principal" activities as follows:

> Among the activities included as an integral part of a principal activity are those

---

**70.** 29 U.S.C. §§ 206–07.

**71.** *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944).

**72.** *Armour & Co. v. Wantock*, 323 U.S. 126, 132–33, 65 S.Ct. 165, 89 L.Ed. 118 (1944).

**73.** Pub. L. No. 80–49, § 1, 61 Stat. 84, 84 (codified as 29 U.S.C. § 251 *et seq.*).

**74.** 29 U.S.C. § 254(a).

closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a 'preliminary' or 'postliminary' activity rather than a principal part of the activity.[75]

The DOL appears to regard the location at which donning and doffing takes place as an important factor in deciding whether such an activity is compensable. Indeed, the DOL indicated in 29 C.F.R. § 790.8(c), footnote 65 ("footnote 65") that a situation requiring compensation "may exist where the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work."[76]

██ Section 790 is not a traditional "notice-and-comment" regulation,[77] but is an "interpretation[] ... intended to indicate the construction of the law which the Administration believes to be correct ...

[and] provide a practical guide to employers and employees as to how the office representing the public interest in enforcement of the law will seek to apply it."[78] "[W]hile [agency interpretations are] not controlling upon the courts by reason of their authority, [they] do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."[79] Therefore, although these interpretive guidelines are "not entitled to the same deference as norms that derive from the exercise of the Secretary's delegated lawmaking powers,"[80] they are " 'entitled to respect' ... to the extent they have the 'power to persuade.' "[81]

In addition to these guidelines, two DOL documents have interpreted the law respecting the compensability of changing clothes at home. The first document is a page from the DOL's Field Operations Handbook dated September 19, 1996 ("Handbook"). Section 31 b13, entitled "Changing clothes at home," states that:

> Employees who dress to go to work in the morning are not working while dressing even though the uniforms they put on at home are required to be used in the plant during working hours. Similarly, any changing which takes place at home at the end of the day would not be an integral part of the employees' employment and is not working time.[82]

---

75. 29 C.F.R. § 790.8(c) (2008).

76. *Id.* § 790.8(c) n. 65.

77. Section 790 is ensconced in Code of Federal Regulations, Title 29, Chapter V, Subchapter B, which is entitled "Statements of General Policy of Interpretation Not Directly Related to Regulations." There is no indication that statements within this section were subject to any administrative procedures. Therefore, the City's reliance on *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007) is inapposite because in that decision the Court deferred to an agency regulation that was subject to "full notice-and-comment procedures." *Id.* at 2350.

78. *Id.* § 790.1(c).

79. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

80. *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 157, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991).

81. *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (quoting *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161).

82. Docket 113, Exhibit 1.

The second document is a DOL memorandum dated May 31, 2006 ("Memo"), which relies on the Handbook section quoted above and states in pertinent part that:

> [D]onning and doffing of required gear is within the continuous workday only when the employee or the nature of the job mandates that it take place on the employer's premises. It is our long-standing position that if employees have the option and the ability to change into required gear at home, changing into that gear is not a principal activity, even when it takes place at the plant.[83]

The Memo was drafted in response to the Supreme Court's decision in *IBP, Inc. v. Alvarez,*[84] discussed below, and sought to advise DOL staff of the state of the law after the Court's decision. The City contends that these documents are entitled to the same deference as regulations and preclude a finding that donning and doffing is compensable. Neither the Handbook nor the Memo are regulations, however, and the language upon which the City relies is merely commentary by the DOL's administrator. Like the interpretative guidelines set forth in § 790, these documents, which are essentially advisory opinions, are "entitled to respect" only to the extent they have the "power to persuade."[85]

In the courts, compensability of donning and doffing under the FLSA has received much treatment. In *Steiner v. Mitchell,* the Supreme Court interpreted the provisions of the Portal Act as requiring compensation for "activities performed either before or after the regular work shift . . .

if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed" and are not otherwise excluded by § 4(a)(1).[86] In *Steiner,* production employees at a battery plant were required to don protective clothing prior to commencing work and to shower after doffing the protective clothing at the end of the day. The Court held that, because battery plant employees were regularly exposed to toxic chemicals, "it would be difficult to conjure up an instance where changing clothes and showering are more clearly an integral and indispensable part of the principal activity of the employment than in the case of these employees."[87]

More recently, the Ninth Circuit found that donning and doffing of protective gear by meat production plant workers was compensable under the FLSA. In *Alvarez v. IBP, Inc. (Alvarez I),* the court set forth a two-part analysis to be used in assessing claims of compensability of a principal activity: "to be 'integral and indispensable,' an activity must be [1] necessary to the principal work performance and [2] done for the benefit of the employer."[88] With respect to the first inquiry, the court concluded that because the donning and doffing of meat production gear on the employer's premises is required by law, employer policy, and the nature of the work, such donning and doffing is necessary to the principal work performed.[89] In so concluding, the court relied on footnote 65 of the DOL's guidelines pertaining to changing clothes, discussed above, which

---

**83.** Docket 113, Exhibit 2 at 3.

**84.** 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005).

**85.** *Christensen,* 529 U.S. at 587, 120 S.Ct. 1655.

**86.** 350 U.S. 247, 256, 76 S.Ct. 330, 100 L.Ed. 267 (1956).

**87.** *Id.*

**88.** 339 F.3d 894, 902–03 (9th Cir.2003), *aff'd,* 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005).

**89.** *Alvarez I,* 339 F.3d at 903.

opined that changing clothes must be done on an employer's premises to be considered necessary.[90] Of the second inquiry, the court held that "it is beyond cavil that the donning, doffing, washing, and retrieving of protective gear is, at both broad and basic levels, done for the benefit of [the employer]," reasoning that not only does such donning and doffing satisfy the employer's safety requirements, it prevents unnecessary workplace injury and contamination.[91] Immediately after *Alvarez I*, the Ninth Circuit reached a similar conclusion in *Ballaris v. Wacker Siltronic Corp.*, which found that time spent donning and doffing plant uniforms on an employer's premises was compensable under the FLSA and not excluded by the Portal Act.[92] In so concluding, the *Ballaris* court relied on footnote 65 of the DOL's guidelines and the fact that "Wacker 'required' [its] workers to change into and out of their uniforms at the plant, and only at the plant, in the normal course of the employees' jobs."[93]

The Supreme Court affirmed *Alvarez I* in *IBP, Inc. v. Alvarez (Alvarez II)* and held that:

> any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity'. under section 4(a) of the Portal–to–Portal Act. Moreover, during a continuous workday, any walk-

ing time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of that provision, and as a result is covered by the FLSA.[94]

The Court relied on another DOL guideline, which states: " '[T]o the extent that activities engaged in by an employee occur after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday, the provisions of [§ 4] have no application.' "[95] The Court's decision might appear to imply that if an employee performs an integral and indispensable activity at home that is itself a principal activity, any walking or traveling time that occurs after the beginning of an employee's first principal activity would be covered by the FLSA. However, the Court rejected the proposition that the continuous workday rule would apply in every situation.[96] "[T]he Secretary [of Labor] assumed that there would be some cases in which walking between a locker room where the employee performs her first principal activity and the production line would be covered by the FLSA and some cases in which it would not be."[97] The Court concluded that, based on the DOL's regulation, it would be incorrect to conclude that walking or traveling would

---

90. *Id.* (citing 29 C.F.R. § 790.8(c) n. 65); *see also Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 912 (9th Cir.2004) (relying in part on the fact that the employer required employees to don and doff on the employer's premises).

91. *Alvarez I*, 339 F.3d at 903.

92. 370 F.3d 901, 911–12 (9th Cir.2004).

93. *Id.* at 911 (citing *Alvarez I*, 339 F.3d at 903).

94. 546 U.S. 21, 37, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005).

95. *Alvarez II*, 546 U.S. at 28, 126 S.Ct. 514 (quoting 29 C.F.R. § 790.6(a)).

96. *Cf. Ballaris*, 370 F.3d at 912, which was decided after *Alvarez I* but before *Alvarez II*, and concluded that "the time spent traveling between the various cleanrooms and locker rooms, before and after changing out of plant uniforms, is compensable." *Id.*

97. *Alvarez II*, 546 U.S. at 37, 126 S.Ct. 514 (citing 29 C.F.R. § 790.7(g) n. 49).

either always be non-compensable or never be compensable.[98]

In addition to the above framework, the FLSA contains an exception that excludes compensation for changing clothes where the terms or customs under a collective bargaining agreement so dictate. FLSA § 3(*o*) provides that "any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective bargaining agreement [is not compensable]."[99] In the Ninth Circuit, this exception has been construed narrowly and has been found to apply to donning and doffing "typical" clothing, but not personal protective equipment.[100] Whether this exception might apply in any given factual scenario will depend on the collective bargaining agreement in place and whether any established custom or practice may be discerned.

 Finally, although tasks may be integral and indispensable to a principal activity, "employees cannot recover for otherwise compensable time if it is *de minimis*."[101] As the Supreme Court has observed, "[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded [because s]plit-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act."[102] The DOL has interpreted this rule as applying "only where there are uncertain and indefinite periods of time involved of a few seconds or minutes of duration, and where the failure to count such time is due to considerations justified by industrial realities."[103] Of this rule, the Ninth Circuit has held that:

> [a]n important factor in determining whether a claim is *de minimis* is the amount of daily time spent on the additional work. There is no precise amount of time that may be denied compensation as *de minimis* [and n]o rigid rule can be applied with mathematical certainty ... [r]ather, common sense must be applied to the facts of each case.[104]

Thus, tasks "so insubstantial and so difficult to monitor" may be rendered non-compensable even though they are integral and indispensable.[105] On this basis, the *Alvarez I* court found that the donning and doffing of protective gear was compensable, but concluded that the donning and doffing of non-unique protective gear, such as protective goggles and hardhats, was non-compensable as *de minimis*.[106]

Since August 2007, there have been five district court decisions in the Ninth Circuit concerning the compensability of time spent donning and doffing police uniforms and protective gear. In *Martin v. City of Richmond*, plaintiffs were permitted to don and doff their uniforms at home or at

---

**98.** *Alvarez II*, 546 U.S. at 37, 126 S.Ct. 514 ("That assumption is, of course, inconsistent with IBP's submission that such walking is *always* excluded by § 4(a), just as it is inconsistent with respondents' view that such walking is *never* excluded.") (emphasis in original).

**99.** 29 U.S.C. § 203(*o*).

**100.** *Alvarez I*, 339 F.3d at 905.

**101.** *Lindow v. United States*, 738 F.2d 1057, 1061–62 (9th Cir.1984).

**102.** *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

**103.** 29 C.F.R. § 785.47.

**104.** *Lindow*, 738 F.2d at 1062.

**105.** *Alvarez I*, 339 F.3d at 904.

**106.** *Id.* at 905.

the police station and the evidence showed that some officers donned and doffed at home, some at the station, and some partially at both locations.[107] In the case of officers who donned and doffed at home, the Richmond Police Department required those officers to conceal their identity as officers while not on duty. Ruling on cross motions for summary judgment, the court concluded that "[a] police officer's uniform, in and of itself, does not assist the officer in performing his duties," reasoning that "[n]one of [the clothing worn by an officer is] actually integral or indispensable to the officer in carrying out his tasks." [108] In so concluding, the court rejected plaintiffs' argument that the apparent authority attached to donning a uniform renders it a necessary part of the job: "[a]side from the authority they connote, these items of clothing do not help catch suspects, and they do not protect officers from violence." Protective gear, on the other hand, was "a different issue" for the *Martin* court.[109] Because "it would be unthinkable to send officers into the streets to fight crime without [protective gear]" and the donning of protective gear is clearly "done for the benefit" of the police department, the donning and doffing of protective gear could be compensable *if,* the court alluded, such donning and doffing were *not* done at home.[110] However, because plaintiffs had raised a genuine issue of material fact as to whether officers had the "option and ability" to don and doff protective gear at

home, the court denied summary judgment on the issue of compensability of protective gear and left open the question whether donning and doffing of protective gear on the employer's premises is required by the nature of the work.[111]

In *Abbe v. City of San Diego,* a district court in the Southern District of California found that time spent donning and doffing the police uniform is not compensable under the FLSA holding that because donning and doffing of the police uniform need not be performed at the police station, it is neither integral nor indispensable to the principal activities of employment.[112] Furthermore, the *Abbe* court held that time spent donning and doffing of protective gear was *de minimis* because the record showed that donning and doffing of protective gear takes less than 10 minutes.[113] Finally, the court found that, on the undisputed record, § 3(o ) precluded compensation for donning and doffing uniforms because "there is a pattern and practice established under the MOU" that police officers have never been compensated for donning and doffing their uniforms or protective gear.[114] Unlike *Martin,* the court did not reserve judgment on whether officers had the "option and ability" to don and doff protective gear at home because the *Abbe* plaintiffs failed to raise a triable issue of fact on this question.[115]

In *Lemmon v. City of San Leandro,* a district court of the Northern District of

---

107. *Martin v. City of Richmond,* 504 F.Supp.2d 766, 767–69 (N.D.Cal.2007).

108. *Id.* at 774.

109. *Id.*

110. *Id.* at 774–75. The *Martin* court was persuaded by the DOL's interpretive rule that "donning and doffing of protective gear at home typically renders that activity noncompensable under the FLSA." *Id.* at 775 (citing 29 C.F.R. § 790.8(c) n. 65).

111. *Id.* at 776.

112. 2007 WL 4146696, at *7 (S.D.Cal. Nov. 9, 2007).

113. *Id.*

114. *Id.* at *8. The court excepted protective gear from this holding, relying on *Alvarez I*'s conclusion that safety gear is not "clothing" within § 3(o ). *Id.* at *8 n. 5 (citing *Alvarez I,* 339 F.3d at 905).

115. *Id.* at *7 n. 4.

California reached the opposite conclusion, holding that time spent donning and doffing police uniforms and protective gear is compensable under the FLSA, regardless of where such donning and doffing takes place, because it is integral and indispensable to police work.[116] Using the *Alvarez I* analysis, the court found donning and doffing "necessary" because "[t]he components of the police uniform trigger instant recognition of police officers, which is essential to the efficient performance of police work"—that is, an officer's uniform is "part of the continuum of force."[117] Furthermore, the court held that donning and doffing of uniforms and protective gear is done primarily for the benefit of the employer because, *inter alia*, "it facilitates a ready and healthy police force" and "helps police officers do their jobs more efficiently."[118] The court also held that time spent walking to and from changing and work areas was not compensable because such time is expressly excluded from compensation by the Portal Act.[119] In concluding that time spent donning and doffing is compensable, the court noted that "there is no explicit requirement in the Ninth Circuit that the preliminary or postliminary activity take place on the employer's premises" and "refuse[d] to inject a location limitation into the analysis for finding compensability under the FLSA."[120] Nevertheless, the court stated in dicta that because the record showed that "most officers don and doff at the station in practice[,] ... [that was] strong indicia that the donning and doffing of the uniform at the police station is a *de facto* requirement."[121]

In *Bamonte v. City of Mesa*,[122] Judge Wake of this District disagreed with the reasoning in *Lemmon*, opting instead to adopt the analysis offered in *Abbe*. In *Bamonte*, Judge Wake held that time spent donning and doffing uniforms and protective gear is not compensable under the FLSA. He ruled that because the record showed that the Mesa police officers have the option and ability to change their uniforms and gear at home, donning and doffing is a non-compensable preliminary or postliminary activity.[123] Judge Wake relied principally on *Abbe* which, in turn, was based on the DOL's May 31, 2006 Memo indicating that "the relevant inquiry is not whether Plaintiffs' uniforms or protective gear are necessary or integral to the performance of their duties, but rather whether the nature of their work requires the donning and doffing process to be done at the station or reporting place."[124]

Finally, a district court in the Central District of California held in *Maciel v. City of Los Angeles*, in two separate orders, that (1) donning and doffing of uniforms is not compensable because it was precluded under § 3(*o*) by virtue of the officers' collective bargaining agreement;[125] and

116. 538 F.Supp.2d 1200, 1209 (N.D.Cal. 2007).

117. *Id.* at 1204.

118. *Id.* at 1209–09.

119. *Id.* In any event, regardless of whether travel time is expressly excluded, the *Alvarez II* Court rejected the notion that the continuous workday rule would apply in every situation. 546 U.S. at 36–37, 126 S.Ct. 514 (citing 29 C.F.R. § 790.7(g) n. 49).

120. *Lemmon*, 538 F.Supp.2d at 1206.

121. *Id.*

122. 2008 WL 1746168, at *4 (D.Ariz. Apr. 14, 2008).

123. *Id.* at *6.

124. *Id.* at *5.

125. 569 F.Supp.2d 1038, 1048 n. 11 (C.D.Cal. 2008) (noting that the court had already granted defendant's motion for summary judgment with respect to donning and doffing uniforms based on the exception under § 3(*o* )).

(2) donning and doffing of protective gear is compensable because it is an integral and indispensable part of the principal activities of police officers.[126] With respect to protective gear, the court reasoned that donning and doffing protective gear must, for all practical purposes, be performed on site because the LAPD encouraged such a practice and provided lockers for the purpose of storing protective gear while its officers are off duty.[127] The court did not find persuasive the department's evidence that donning and doffing of protective gear at the station was a "mere convenience."[128] The court next found that because donning and doffing protective gear is required by the LAPD, it is done primarily for the department's benefit.[129] Finally, the *Maciel* court held that donning and doffing protective gear did not fall within the § 3(*o*) exception[130] or constitute a *de minimis* activity.[131]

## B. Analysis

### 1. Patrol Officers Have the Option and Ability to Don and Doff at Home

■ Although plaintiffs urge that the question of whether an activity is integral and indispensable is not limited by the location at which that activity is performed, the law of the Ninth Circuit precludes compensation for donning and doffing where an employee has the "option and ability" to don and doff at home. As discussed above, the *Alvarez I* court expressly relied on the DOL's conclusion in footnote 65 that donning and doffing may be compensable where changing on the employer's " 'premises is required by law, by rules of the employer, [and] by the nature of the work.' "[132] Similarly, the *Ballaris* court held that donning and doffing of plant uniforms was compensable *because* the employees were "required ... to change into and out of their uniforms at the plant, and only at the plant, in the normal course of [their] jobs."[133]

Most district court cases addressing this question in the Ninth and other circuits have concluded that time spent donning and doffing uniforms and protective gear is not compensable under the FLSA where an employee may do so at home.[134] The Ninth Circuit's apparent "location limitation" on compensability of donning and doffing is supported by the DOL guideline and opinions, by which this court is persuaded. The DOL's Handbook states that employees dressing for work in the morning "are not working while dressing" and that "any changing which takes place at home at the end of the day would not be an integral part of the employees' employment and is not working time."[135] Moreover, the DOL's Memo states that it is the "longstanding position [of the DOL] that if

---

126. *Id.* at 1049.

127. *Id.*

128. *Id.*

129. *Id.*

130. *Id.* at 1049–50.

131. *Id.* at 1051–52.

132. *Alvarez I*, 339 F.3d at 903 (quoting 29 C.F.R. § 790.8(c) n. 65).

133. *Ballaris*, 370 F.3d at 911.

134. *See Abbe*, 2007 WL 4146696, at *5 (collecting cases); *see also Martin*, 504 F.Supp.2d at 775 ("The Court accepts the proposition, espoused by the Department of Labor, that the donning and doffing of protective gear at home typically renders that activity non-compensable under the FLSA."); *Bamonte*, 2008 WL 1746168, at *5.

135. Docket 113, Exhibit 1; *see also id.*, Exhibit 2 at 3 ("[D]onning and doffing of required gear is within the continuous workday only when the employee or the nature of the job mandates that it take place on the employer's premises.").

employees have the option and the ability to change into required gear at home, changing into that gear is not a principal activity, even when it takes place at the plant."[136] Importantly, the *Lemmon* court, which disregarded the location limitation urged by the DOL guidelines and *Alvarez I*, did so on a record indicating that donning and doffing was in fact taking place mostly on the employer's premises. Thus, even *Lemmon* may be said to have implicitly recognized that the location of such donning and doffing was a relevant consideration supporting its finding of compensability.[137]

Here, the record is clear that the Department has no policy against changing at home and that patrol officers are free to don and doff their uniforms and protective gear wherever they desire. Most of the deponents in this case have testified that they don and doff, at least partially, at home. Plaintiffs nevertheless contend that although they are permitted to don and doff at home, health and safety concerns prevent some or all officers from changing at home. For example, plaintiffs have pointed to safety issues that may arise while commuting in uniform, and claim that such a practice could lead to harassment or retaliation by disgruntled citizens. Moreover, plaintiffs have raised concerns that their equipment is dangerous and that commuting in uniform increases health risks, stress-related injuries from donning certain gear, and potential injuries to family members who encounter firearms or other dangerous devices stored at home. Based on these concerns, plaintiffs argue that they have raised genuine issues of material fact with respect to the question

of whether they have the option and ability to change at home. The court disagrees.

For the same reasons set forth in Judge Wake's decision in *Bamonte*, the court finds that plaintiffs' alleged health and safety concerns can be "easily and effectively mitigated."[138] Although it appears that the Department does not have a formal policy against commuting in uniform or protective gear, patrol officers concerned about being identified or harassed while off duty can easily cover their uniforms during their commutes. Moreover, because at least 12 of the deposed patrol officers actually change at home and 17 more change partially at home, the option to do so cannot be as illusory as plaintiffs suggest. Any suggestion that risks to officers and family members, however real, constitute an effective denial of the option and ability to change at home ignores the lack of a policy against changing at home and the reality that many officers change at home without regard to any alleged risks. Finally, that motorcycle officers with take-home vehicles always don and doff at home also undermines the argument that all patrol officers are functionally precluded from changing at home by health and safety concerns. Plaintiffs have therefore failed to raise a genuine issue of material fact as to their option and ability to change at home. Because Phoenix patrol officers have the "option and ability" to don and doff uniforms and protective gear at home, these activities are preliminary and postliminary to the principal activity of police work and therefore are non-compensable under the FLSA.

Plaintiff makes several additional arguments which, while unpersuasive, deserve

---

136. *Id.,* Exhibit 2 at 3.

137. The *Lemmon* court noted in dicta that because the record showed that "most officers don and doff at the station in practice[,] ... [that was] strong indicia that the donning and doffing of the uniform at the police station is a *de facto* requirement." *Lemmon,* 538 F.Supp.2d at 1206.

138. *Bamonte,* 2008 WL 1746168, at *5.

some discussion. Plaintiffs first argue that the DOL guidelines contain other provisions that speak to an employee's entitlement to compensation regardless of where it is performed.[139] Plaintiffs argue that 29 C.F.R. § 776.6 expressly provides for FLSA coverage whether employees "perform their work at home, in the factory, or elsewhere."[140] Although plaintiffs urge that this section conflicts with the DOL interpretive guidelines and advisory opinions that touch specifically on the issue of compensability of donning and doffing at home (e.g., § 790.8(c), footnote 65, the Memo, and the Handbook), the court disagrees. Rather, the court is persuaded by the more recent DOL guidelines and opinions, which apply specifically to compensability of donning and doffing, and state that "if employees have the option and ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place [on the premises]."[141] The court therefore concludes that § 776.6 must apply only to compensability of principal job duties performed at home, and not the preliminary and postliminary tasks of changing clothing and gear. Were the court to read § 776.6 otherwise, § 790.8(c), footnote 65, the Memo, and the Handbook would be rendered superfluous.

The same reasoning applies to plaintiffs' argument that 29 C.F.R. § 785.23 permits employees to make agreements estimating the amount of and compensating for work performed at home. Like § 776.6, § 785.23 applies to actual job duties performed at home, not tasks preliminary and postliminary thereto. Plaintiffs' cases holding that work performed at home is compensable are also distinguishable on the ground that they do not involve preliminary and postliminary tasks, but principal job duties for which the employees in question are hired.[142] Finally, plaintiffs' contention that the "suffer or permit" rule, as explained in 29 C.F.R. § 553.221(b), compels compensation for time "during which the employee is suffered or permitted to work for the employer" is not persuasive.[143] Section 553.221, like other DOL guidelines calling for compensation of principal activities performed at home, does not apply to activities that are preliminary and postliminary to principal job duties like changing clothing and gear.[144] Indeed, section 553.221(b) contains examples of pre-shift and post-shift activities of law enforcement and fire protection officers that are "closely related to the performance of the principal activity," including "attending roll call, writing up and completing tickets or reports, and washing and re-racking fire hoses."[145] Conspicuously missing from this list is the donning and doffing of uniforms and protective gear.

## 2. Police Uniforms Are Not "Necessary" to Police Work

Although the court concludes that neither uniforms nor protective gear are necessary to police work because patrol officers have the option and ability to don and doff at home, the court writes further to note a second basis for its decision with

---

139. Docket 118 at 17.

140. 29 C.F.R. § 776.6.

141. Docket 113, Exhibit 2 at 3.

142. Plaintiffs' canine handler cases are inapposite because, unlike donning and doffing, caring for canines is a unique task that can only be performed at home and is central to the principal duties of a canine handler. Leever v. Carson City, 360 F.3d 1014, 1017 n. 1 (9th Cir.2004).

143. Docket 118 at 17 (quoting 29 C.F.R. § 553.221(b)).

144. 29 C.F.R. § 785.12.

145. 29 C.F.R. § 553.221(b).

respect to the donning and doffing of police uniforms. Although a police uniform may assist an officer in his or her law enforcement work to the extent a uniform "is often sufficient by itself to induce compliant behavior" or "contributes to officer safety," [146] that argument "proves too much." [147] The logic supporting this contention—that a uniform's ability to identify its wearer somehow renders that uniform necessary to employment—could extend to the employees of almost any profession falling within the FLSA's purview. For example, a municipal refuse collector who dons a brightly-colored jumpsuit adorned with reflective tape may be safer from passing vehicles and toxins contained in refuse as a result of the suit, but that does not make such a jumpsuit "necessary" to the job of refuse collection. Similarly, the "continuum of force" that plaintiffs believe render the uniform necessary to an officer's job duties may certainly assist a patrol officer in performing some of those duties (*e.g.*, by providing a psychological advantage or diminishing resistance), but such assistance "is necessary to the performance of an officer's duties only in the insufficient sense that uniforms identify many types of workers." [148]

### 3. The Section 3(*o* ) Exception

The City also contends that compensation for time spent donning and doffing uniforms is precluded under FLSA § 3(*o* ) because there is an established custom or practice against compensating employees under agreement for time spent donning and doffing. Because the court has disposed of the City's summary judgment motion on other grounds, it is not neces-

sary to resolve the parties' dispute respecting the § 3(*o*) exception.

### 4. The City's *De Minimis* Defense

The City further contends that time spent donning and doffing protective gear is *de minimis*. Again, because the court has disposed of the City's summary judgment motion on other grounds, it is not necessary to determine the validity of the City's *de minimis* defense.

## V. CONCLUSION

For the reasons set out above, defendant's motion for summary judgment at docket 113 is **GRANTED** and plaintiffs' motion for partial summary judgment at docket 118 is **DENIED**.

---

146. Docket 118 at 12–13.

147. *Martin,* 504 F.Supp.2d at 773.

148. *Bamonte,* 2008 WL 1746168, at *5. Because the court concludes that donning and

doffing of uniforms and protective gear is not "necessary" to policing, it need not address the matter of whether such an activity benefits the Department.