GOULD, Circuit Judge,
concurring in the judgment in part and dissenting in part:
I would not announce a bright-line location rule that controls the compensability of preliminary and postliminary activities under the FLSA. The location where an activity is performed is just one of many useful tools in the fact-sensitive compensability analysis. Location is not in and of itself the controlling test. Because I disagree with the majority’s approach and its holding with respect to job-related protective gear, I concur in the judgment only with respect to the majority’s determination that the donning and doffing of police uniforms is non-compensable. I would hold that the donning and doffing of protective gear is compensable, subject to a de minimis analysis on remand. Thus I respectfully dissent in part.
I
The majority creates a bright-line rule that donning and doffing uniforms and protective gear is integral and indispensable to police work, and thus compensable under the FLSA, only if a “requirement of law, rule, the employer, or the nature of the work mandates donning and doffing at the employer’s premises.” Op. at 1233. This new rule is contrary to the Supreme Court’s context-specific approach to determining compensability. Even absent that conflict, I doubt that the new rule will do much to clarify the law governing when the donning and doffing of police uniforms and gear is compensable.
A
First, “[t]he Supreme Court’s approach to this principal, integral and indispensable duty question is context-specific.” Alvarez v. IBP, Inc., 339 F.3d 894, 902 (9th Cir.2003) (internal quotation marks omitted), aff'd, 546 U.S. 21, 32, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005) (citing with approval our “context specific” description of the compensability determination). Steiner and Mitchell, the two Supreme Court cases illustrating the proper approach for determining compensability under the Portal-to-Portal Act, examined more than a dozen factors between the two cases in determining compensability. In Steiner, the Court concluded that changing clothes and showering were compensable activities performed by battery-plant employees in Steiner after looking to industrial standards, state-law requirements, insurance-carrier requirements, operational-efficiency considerations, who provided the work clothes, the location and timing of clothes changing and showering, the absence of a written policy governing clothes changing and showering, the testimony of the plant foreman that an unwritten policy required post-shift bathing, and the exception to the bathing policy for an injured worker who did not use the common showers. Steiner v. Mitchell, 350 U.S. 247, 250-51 & n. 1, 76 S.Ct. 330, 100 L.Ed. 267 (1956). In Mitchell, the companion case to Steiner, the Court determined that butchers’ time sharpening knives and saws was compensable after looking at who furnished the knives and sharpening tools, the importance of sharp knives to butchering, when *1234 and where the sharpening was done, and how many knives were sharpened per day. Mitchell v. King Packing Co., 350 U.S. 260, 261-62, 76 S.Ct. 337, 100 L.Ed. 282 (1956). Although the location of the clothes changing and knife sharpening formed part of the analysis in both Steiner and Mitchell, location did not dominate or control the inquiry.[1]
The two prior Ninth Circuit FLSA cases involving clothing and protective gear have emphasized the location where gear was donned and doffed, but both of those cases featured gear that was impractical or dangerous to remove from the plant. See Ballaris v. Wacker Siltronic Corp., 370 F.3d 901, 903-04 (9th Cir.2004) (discussing the full-body “bunny suit” that must be worn to prevent contamination from outside, ambient air); Alvarez, 339 F.3d at 898 n. 2 (listing gear designed to repel blood and liquid associated with animal-carcass disassembly that must be cleaned after each shift). No such practical difficulty exists with respect to police uniforms and protective gear, and I would distinguish Ballaris and Alvarez as involving practical requirements of on-site donning and doffing that are not presented here.[2]
The majority conflates the requirement that a piece of clothing or gear be donned on-site with the importance that the piece of gear has for the job performed. See Op. at 1228 (“[T]he relevant inquiry is whether the nature of the work requires the donning and doffing process to be done on the employer’s premises.”) (alteration omitted) (citing Abbe v. City of San Diego, 2007 WL 4146696, at *7 (S.D.Cal.2007)). This error perhaps arises because the nature of a particular piece of clothing or gear simultaneously determines (1) whether it can practically be donned and doffed off-site, and (2) whether wearing the gear is integral and indispensable to the work performed. Although related, the two inquiries should remain distinct. While Ballaris and Alvarez may suggest that on-site donning will usually be sufficient to trigger compensability under the FLSA, on-site donning is not necessary to make work-related activity, like putting on protective gear, compensable. Rather, the only necessary conditions remain those set out by *1235 the Supreme Court in Steiner: donning the clothing or gear must be an “integral and indispensable part of the principal activities for which [the officers] are employed.” 350 U.S. at 256, 76 S.Ct. 330. It is how the piece of equipment is used, not just where it is donned or doffed, that makes donning and doffing integral and indispensable.
The majority says that it is not announcing a bright-line location condition for donning and doffing to be compensable. But we must evaluate the likely interpretive effects of its rationale. First, it adopts the Department of Labor’s “focus on the location of donning and doffing.” Op. at 1228. Second, in parting ways with Steiner, Alvarez, and Ballaris — cases that compensated donning and doffing — the majority does not reason that donning and doffing were “integral and indispensable” there but not here, as Supreme Court precedent requires. See Steiner, 350 U.S. at 256, 76 S.Ct. 330. Instead, the majority asks whether “on-premises donning and doffing” were required in Steiner, Alvarez, and Ballaris. Op. 4774 (emphasis added). By limiting the discussion of Steiner, Alvarez, and Ballaris to the “on-premises” changing requirement, the majority narrows a many-factored test into a one-fact inquiry. Only by transforming on-premises donning and doffing into the signal fact of those cases can the majority assert that the facts in this appeal are “diametrically opposed” to Steiner, Alvarez, and Ballaris. See Op. at 1225. The final point demonstrating that the opinion in effect creates a bright-line rule jumps out from the majority’s conclusion, which holds that donning and doffing is not compensable “where no requirement ... mandates donning and doffing at the employer’s premises.” Op. at 1233 (emphasis added).
In short, whether the majority is cognizant of it or not, its reasoning in substance imposes a location prerequisite before donning and doffing can be compensable. In making mere location such a salient and dispositive factor, the majority errs. I do not believe the Supreme Court’s context-specific FLSA jurisprudence reasonably supports the imposition of a location requirement for donning and doffing that does not apply to other work activities. The location where the activity is performed should inform, but not control, our inquiry. I would continue to use location as one of many ingredients in the compensability determination but would not make it dispositive in a subset of FLSA cases.
B
The second problem I see with the bright-line location requirement is that it will not effectively create the bright line that the majority seeks. The majority adopts the position taken by the Department of Labor in a 2006 Advisory Memorandum written to Department staff.[3] That memorandum states that “[i]t is our longstanding position that if employees have the option and ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the plant.” Dep’t of Labor, Wage & Hour Adv. Mem. No.2006~ 2 (May 31, 2006).
The language about the “option and ability” to change at home gives rise to the argument that donning and doffing is compensable where employees do not have the *1236 true ability to perform the tasks at home. This argument — that a de facto requirement forces the employee to don and doff on-site — has been repeatedly advanced by police officers in our circuit, often in response to the employer’s invocation of the 2006 Advisory Memorandum. See, e.g., Valladon v. City of Oakland, 2009 WL 3401263, at *9-10 (N.D.Cal.2009) (denying city’s motion for summary judgment because sufficient evidence supported a de facto policy requiring officers to don and doff on-site); Dager v. City of Phoenix, 646 F.Supp.2d 1085, 1100 (D.Ariz.2009) (finding that option to don and doff at home was not “illusory” because twenty-nine officers changed completely or partially at home); Maciel v. City of Los Angeles, 569 F.Supp.2d 1038, 1049 (C.D.Cal.2008) (finding that “[f]or all practical purposes, the equipment must be donned and doffed at the assigned station”); Lemmon v. City of San Leandro, 538 F.Supp.2d 1200, 1206 (N.D.Cal.2007) (finding “strong indicia that the donning and doffing of the uniform at the police station is a de facto requirement”); Martin v. City of Richmond, 504 F.Supp.2d 766, 776 (N.D.Cal.2007) (finding genuine issue of material fact as to whether the nature of police work permits off-site donning and doffing). Indeed, the allegation of a de facto policy requiring on-site donning and doffing was raised in this very case. Bamonte v. City of Mesa, 2008 WL 1746168, at *6 (D.Ariz.2008). The majority opinion endorses this argument by explaining that employees “must have the ability to don and doff their gear at home, not just the option.” Op. at 1231 n.16.
Rather than clarifying whether donning and doffing of police uniforms and gear is compensable, the majority’s approach will just change the terms of the debate. Employees will now focus their energies on showing either that (1) their employer maintains a de facto policy requiring on-site donning and doffing, or (2) that the nature of their work requires it. The bright-line location requirement will do little to resolve the issue of when police officers must be compensated for donning and doffing their uniforms and gear. While straying from the Supreme Court’s context-specific principles, the majority’s approach will in effect provide little actual guidance.
II
Applying a context-specific approach to the Mesa officers’ claims, I agree with the majority that the time officers spend donning and doffing their uniforms is not compensable. I would hold, however, that the time spent donning and doffing the protective gear is compensable, subject to a de minimis analysis.
A
Where uniforms, are concerned, we start with the baseline understanding that changing clothes under “normal conditions” is a non-compensable preliminary or postliminary activity under the Portal-to-Portal Act. Steiner, 350 U.S. at 249, 76 S.Ct. 330. For clothes changing to become compensable in this case, it must be integral and indispensable to policing, meaning that it is necessary to the principal policing activities and done for the benefit of the employer. See Alvarez, 339 F.3d at 902-03.
In the cases where donning and doffing a “uniform” has been found compensable Steiner and Ballaris — the uniform performed a job-related function other than merely identifying the wearer with a particular occupation. In Steiner, the “old but clean work clothes” provided by the employer and worn by the employees helped protect workers from lead oxide poisoning. 350 U.S. at 250-51, 76 S.Ct. 330. Clothes changing also helped the employees avoid injury related to severe *1237 sulphuric acid burns. Id. at 250, 76 S.Ct. 330. In Ballons, some employees were required to wear a uniform consisting of a polo shirt, pants, and shoes under their protective bunny suit. 370 F.3d at 903-04. The uniform, according to the employee manual, was necessary for many reasons, including to “limit potential cleanroom contamination from the clothing worn under the cleanroom suits.” Id. at 904. The uniform aided the manufacture of silicon wafers by limiting air-borne impurities introduced through street clothes. Id. at 903. In both Steiner and Ballons, it was the functional role of the uniform, not the fact that it identified the employee, that triggered compensability.
The Mesa officers’ uniforms identify them as police officers, and they argue that this creates a “command presence” that is necessary to their work in arresting suspects or quieting volatile situations. Yes, the uniform connotes authority, but the long-sleeved shirt, tie, nametag, trousers, socks, and authorized footwear do not assist the officers in making arrests, interviewing witnesses, or writing reports — to name a few of their principal activities— any more than substitute clothing would. The ability of undercover officers, who wear no uniform, to effectively police illustrates the point. I agree with Judge Breyer’s view:
Aside from the authority they connote, [the articles of an officer’s uniform] do not help catch suspects, and they do not protect officers from violence. Something more than the salutary effect of a uniform on those who recognize its cultural significance is necessary to make its donning and doffing “integral and indispensable” to an officer’s “principal activities” of law enforcement. If the law were otherwise, all uniforms would entitle their wearers to compensation under the FLSA.
Martin, 504 F.Supp.2d at 774. Because I conclude that the officers’ uniforms are not necessary to the principal work of policing, I concur in the portion of the judgment holding that the time spent donning and doffing the uniforms is not compensable.
B
The analysis with respect to the protective gear is entirely different. The Mesa officers are required at all times to wear a duty belt, belt keepers, firearm and holster, magazine cases, handcuffs and case, CAP-STUN spray and holder, telescopic baton and holder, TASER with holder, and a portable radio with holder. A bulletproof vest, helmet, and traffic vest must be available to the officers at all times, and the donning of these items is mandatory in certain circumstances, such as when the officer executes a search warrant or directs traffic. The officers are also required to have leg and arm restraints and a flashlight available at all times while on shift. The City of Mesa issues most of this gear and reimburses officers for the purchase of their bullet-proof vests. These tools, which are always worn or available during the shift, are “job-related protective gear.” See Alvarez, 339 F.3d at 903.
The police protective gear is similar to the sanitary aprons, liquid-repelling sleeves, metal-mesh gear, and Kevlar gloves at issue in Alvarez. The meat-processing employees were required to don and doff the protective gear “at various intervals throughout the workday.” Id. Because the Alvarez employees were required by law, employer policy, and the nature of the work to don and use the protective gear, that gear was “necessary to the principal work performed.” Id. Finally, donning and doffing the job-related protective gear was done for the benefit of the employer, because the gear helped the employer satisfy legal requirements, pre *1238 vent contamination, and avoid workplace injury. Id.
Analogizing the protective gear worn by police to the gear in Alvarez, I conclude that the time spent donning and doffing the police protective gear is integral and indispensable. The gear is necessary to making arrests and protecting the public from injury, two of the principal activities performed by the Mesa officers. More specifically, officers use the flashlight to locate suspects and evidence, and use the portable radio to call for backup. The firearm, baton, CAP-STUN spray, handcuffs, and TASER all help the officers restrain and subdue suspects and protect the officers and members of the public from dangerous persons. The helmet, traffic vest, and bulletproof vest further protect the officers’ safety while they engage in dangerous principal activities. This gear is indispensable to the task of policing, and the flexibility surrounding where the gear may be donned and doffed cannot singlehandedly alter that fact.
Donning and doffing the protective gear is also done for the benefit of the employer, one of the main considerations in determining compensability. Alvarez, 339 F.3d at 902. Gear that prevents unnecessary workplace injury is donned for the employer’s benefit. Id. at 903. The protective gear helps officers avoid injury or death during violent situations. Likewise, officers use their protective gear to help keep the public safe while on the roads or when threatened with violence. The gear serves the dual function of protecting the officers and protecting the public, and it is therefore donned for the benefit of the City of Mesa. Having determined that the job-related protective gear is necessary to the principal work performed and donned for the benefit of the employer, I would hold that donning and doffing of this gear is integral and indispensable to the principal policing activities. See id.; Ballaris, 370 F.3d at 910-11.
The last step in the compensability analysis is a determination of whether an otherwise-compensable activity is not compensable because the time required to complete it is de minimis. Op. at 1224; see also Alvarez, 339 F.3d at 903 (citing Lindow v. United States, 738 F.2d 1057, 1061-62 (9th Cir.1984)). The Supreme Court has said that the FLSA does not compensate “a few seconds or minutes of work beyond the scheduled working hours.” Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 692, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). We have said that “periods of approximately 10 minutes” are often considered de minimis. Lindow, 738 F.2d at 1062 (citing cases finding periods between two and fifteen minutes de minimis). I might imagine that the time it takes to put on and take off a belt and vest runs only in seconds, or a few minutes, and is not compensable under the de minimis test, but, given the district court’s approach, the parties did not make a record on the de minimis issue.[4] So, on my theory of the case, a remand would be necessary for an evidentiary hearing to determine whether the time spent to don and doff the protective gear is de minim-is.
*1239 III
I disagree with the location-based bright-line rule created by the majority, prompting me respectfully to dissent.[5] I would instead conclude that the donning and doffing of police protective gear is compensable unless the time involved is de minimis. I concur in the judgment to the extent that it holds that the donning and doffing of the police uniform is not compensable.

. In Mitchell, the meat-packing plant housed a room with an emery wheel and grindstone where the knifemen sharpened their tools. 350 U.S. at 262, 76 S.Ct. 337. Because of the centrality of knife sharpening to butchering, it seems unlikely that the Court would have concluded that sharpening was not compensable if the knifemen had enjoyed the option to do this task either at home or at the plant. Either way, the knifemen had to sharpen their knives and saws to properly perform their jobs, so the task would presumably have been compensable. See id.
The facts here are analogous. Regardless of the location where donning and doffing takes place, police officers perform the same series of steps to ready their uniforms and gear. Under the majority's new rule, any police department that mandates that its officers don and doff their uniforms and gear at the precinct must pay for that time, while those departments that make the donning and doffing location optional face no such requirement. Perhaps I missed something, but it seems quite strange that the exact same activity would be only sometimes compensable under the FLSA if we follow the majority's rule.

. The majority is concerned that I discuss the practical difficulty of donning and doffing off-site even though it was not explicitly addressed in the Ballaris and Alvarez cases. Op. at 1225-26. The majority’s assumption that the collection of factors that may properly be considered in the compensability analysis was closed after Ballaris and Alvarez highlights the incorrect view it takes of the compensability inquiry. It is appropriate to consider every fact relevant to donning and doffing police uniforms and gear, and to evaluate those total circumstances under the previously established law. But the majority in substance has artificially narrowed the inquiry to one factor: location. In so doing, the majority eschews Alvarez's context-specific approach.

. Neither the 2006 Advisory Memorandum nor the Department's Statements of General Policy regarding the Portal-to-Portal Act carry the force of law because they are not the product of formal adjudication or notice-and-comment rulemaking. See 29 C.F.R. § 790.1(b)-(c); Christensen v. Harris County, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000).

. Even if the time to put on and take off the protective gear is not de minimis and is compensable under the FLSA, the officers' commute time would not thereby be rendered compensable. Commute time is specifically excluded from FLSA compensability. 29 U.S.C. § 254(a)(1); 29 C.F.R. § 785.16. That is true even where some at-home activities following the commute are compensable. See Rutti v. Lojack Corp., 596 F.3d 1046 (9th Cir.2010) (holding that data transmissions performed at home are an integral and indispensable part of the principal job activity, but nonetheless holding that the off-the-clock activity did not extend the workday or render commute time compensable).

. Although I ground my disagreement on a different view from the majority about the Supreme Court's controlling precedent, I also have grave pragmatic reservations about the consequences of the majority's rule. It may be penny wise but pound foolish to save the expense of compensating for protective gear donned at home. This is only an illusory saving if the work was de minimis in any event. Worse, to the extent that the majority's holding may deter some police from using protective gear, there may be increased injuries or even lives lost. Consider that officers might intervene to address problems threatening public safety while they are en route to work, and if so dangers increase absent protective gear. That the majority labels this possibility “hyperbole” does not resolve my concern.